Ruffin, C. J.
 

 If there were anything in the constitutional objection, it would not be competent to Troy to urge it, as he was not appointed to the office of Clerk and Master for four years or for any period, as an independent office, but came into the office of Clerk of the Superior Court for the unexpired term of the Clerk who resigned, and, as such, he performed the duties of Clerk and Master also. He, therefore, was out of office, at all events, and had no such interest in the question as would entitle him, asa private person, to oppose the admission of Wooten, or appeal from the order. If Wooten were improperly admitted, it is the right of the public to question his title, and that right can only be asserted by the proper officers, and not by individuals.
 

 
 *379
 
 But the Court is'of opinion, that the Act of 1826 is constitutional. The only provision in that instrument, which has any bearing on the question, is that in the 35th section, that no person shall hold more than one lucrative office at any one time. But that does not restrain the Legislature from abolishing an office and transferring its duties, so as to attach them to another office, when it shall seem to the General Assembly to promote the public weal, and when the several duties are not in their nature incompatible. A statute, for example, could not uuite the duties of Judge and Attorney General in the same person or office. But there is nothing incongruous in thus connecting the functions of a Judge of the Courts of common law and of the Chancellor; and in fact that has been done up to this period, beginning eotemporaneously with the organization of the Government under the Constitution, after the establishment of Independence. So, the Clerk of this Court has always, by virtue of that office, acted as both Clerk and Clerk and Master on the law and equity side of the Court. No one has ever thought, that either of those instances was an infraction of the Constitution. The purpose of that provision was to ensure the due performance of the duties of every office by preventing any person concentrating in himself two or more offices, whereby he would be unable to give the necessary attention to all ; which there might be some danger of being effected by the influence one office might create. It was not supposed, the Legislature would unnecessarily multiply offices, so that anyone would not furnish employment nor yield a competent livelihood to the incumbent. Therefore, when the Legislature should create distinct offices and assign them appropriate duties, the meaning was, that the appointing power, in whomsoever vested, should not bestow more than one of them on the same person, or, at least, that the same person should not hold them at the same time. But, as the functions of a
 
 *380
 
 Clerk and Clerk and Master are homogeneous, and in the beginning those functions might have been all attached to the same office, the power must likewise reside in the Legislature, when deemed fit, after creating the offices, to unite them again, so as to make but one out of both, or, rather, to abolish one and assign its duties and emoluments to the other. The policy of such an act may ob. viouslybe beneficial. In many small Counties the business and emoluments of Clerkships of each kind, when separated, are so small, that competent men cannot be prevailed on to accept the offices ; essential though they be, to the convenience of suitors and the due administration of justice. It therefore answers an important purpose in the public economy, by uniting the duties and fees in one office, to induce fit men to take the place. There can be no doubt, for instance, that, instead' of registering deeds in a separate office, the Legislature might, as is done in some States, require them to be enrolled in the Court in which they are proved ; and, with that view, it would be competent to abolish the office of register and require the Clerk of the County Court, as such, to perform the duties. For, while it is not to be presumed, on the one hand, that the Legislature will create needless offices, so, on the other, it cannot be presumed that it will, with the intent to evade a constitutional provision, impose on one officer more duties than by reasonable diligence he can discharge.
 

 The Act under consideration is of the kind just spoken of. It imites the office of Clerk and Master to that of Clerk of the Superior Court — justly waiting, however, until there should be no Clerk and Master before carrying the enactment into execution. It is said, indeed, there are terms in the Act, which preserve the separate exis~ tence of the office of Clerk and Master. But it seems to the Court otherwise. Taking from the Clerk a bond to perform the duties ol Clerk and Master has no effect on
 
 *381
 
 the question ; for every Clerk gives several bonds to cover duties of different kinds, indeed, if the language of the Act had left it doubtful, whether the Legislature had the particular intent to abolish the office of Clerk and Master or not, it would be the duty of the Court to hold the former ; for the reason, that, as a principle of construction, it must be assumed that the Legislature did not mean to violate the Constitution, and the statute must be interpreted so as to make it consistent with the Constitution, if possible, and then obeyed so far as it is consistent therewith. Consequently the Court hold that the orders of the Superior Court were right, and affirm them.
 

 Per Curiam.
 

 Orders below affirmed.